UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ELLEN BROLLOSY,

                        Plaintiff,

                - against -

MARGOLIN, WINER & EVENS, LLP,

                        Defendant.
----------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
04-CV-0873 (DRH) (ARL)

**A P P E A R A N C E S :**

**GANDOLFO LAW FIRM**
Attorneys for Plaintiff
2202 Bellmore Avenue
Bellmore, New York 11710
By: Thomas M. Gandolfo, Esq.

**SEYFARTH SHAW LLP**
Attorneys for Defendant
1270 Avenue of the Americas
New York, New York 10020
By: Andrew T. Hahn, Esq.

**HURLEY, District Judge:**

        Plaintiff Ellen Brollosy ("Plaintiff") brings the present action against defendant

Margolin, Winer & Evens LLP ("Defendant") for violations of the Age Discrimination in

Employment Act (the "ADEA") and the New York State Human Rights Law ("NYSHRL"),

claiming that she was discriminated against on the basis of her age.  Defendant has moved for

summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons that follow,

Defendant's motion is granted and this case is dismissed in its entirety.

## *BACKGROUND*

        The material facts, drawn from the Complaint and the parties' Local 56.1

Statements, are undisputed unless otherwise noted. In September 2001, Plaintiff was hired by Defendant, an accounting firm, to work as a Human Resources Manager (the "Staffing Position"). At the time she was hired, Plaintiff was 54 years old. Plaintiff was interviewed by Teddy Selinger ("Selinger"), Defendant's managing partner, as well as several other partners. Selinger conveyed to Plaintiff the firm's decision to hire her and signed Plaintiff's offer letter. The offer letter is dated September 17, 2001 and provides that "[m]erit increases based on performance would be made on your anniversary date." (Pl.'s Dep., dated Oct. 11, 2004 ("Pl.'s Dep."), Ex. G.) Defendant contends that Selinger alone made the decision to hire Plaintiff; Plaintiff claims it was a group decision by the executive committee. At the time of Plaintiff's hire, Selinger was 49 years old. Plaintiff's annual salary was $85,000, plus a starting bonus of $2,000.

Stan Stempler ("Stempler") was the Administrative Partner and the Director of Human Resources when Plaintiff was hired and was her immediate supervisor until he left the firm in July 2002. Ann Flanagan ("Flanagan") was hired as Human Resources Director in July 2002 and replaced Stempler as Plaintiff's immediate supervisor. Flanagan was 40 years old when she was hired.

From September 2001 through November 2002, Plaintiff was primarily responsible for coordinating the teams on projects for accountants at the firm and providing for the appropriate level of staffing on those projects. Prior to joining Defendant, Plaintiff did not have any significant experience in this area and had to be trained by Stempler. Selinger mistakenly thought that Plaintiff had experience staffing attorneys on legal projects at her prior job; Plaintiff denies ever making any such representations. Stempler spent a substantial amount

of time with Plaintiff teaching her how to perform her staffing and scheduling functions. He also spent a great deal of time introducing her to the partners and other accountants at the firm and discussed whom their clients were.

Defendant claims that through the spring of 2002, Selinger had received substantial feedback from other partners, managers, and some staff indicating that they were dissatisfied with Plaintiff's performance. Although Selinger contends that he verbally conveyed this dissatisfaction to Plaintiff, Plaintiff denies ever receiving any complaints about her performance.

Stempler was terminated in July 2002. Defendant maintains that despite Plaintiff's poor performance, the partners did not also discharge Plaintiff because they did not want the human resources department to be understaffed. Selinger claims he also wanted to give Plaintiff the opportunity to work with someone other than Stempler and to improve her performance. Flanagan was hired in July 2002 to oversee the human resources department and became Plaintiff's direct supervisor.

Plaintiff and Flanagan had a cordial and amicable professional relationship. Nonetheless, after a few months, Flanagan agreed that Plaintiff could not satisfactorily perform her job duties. Again, Plaintiff claims that Flanagan never conveyed any of her alleged dissatisfaction to Plaintiff.

Plaintiff did not receive a salary increase or a performance review on her anniversary date in the Fall of 2002. Defendant contends that Plaintiff did not receive a salary increase because of her poor performance. Defendant further alleges that Plaintiff's performance could not be evaluated because Flanagan had only been working with Plaintiff for a few months.

Plaintiff again denies ever being informed of her alleged poor performance.

Selinger claims that at this point, he wanted to terminate Plaintiff but instead agreed with Flanagan to transfer Plaintiff to a newly created position called Manager of Administrative Services (the "Administrative Position"). Flanagan believed that based on Plaintiff's experience, this would be a more suitable role for her. The transfer was effective November 2002 and Plaintiff's compensation remained unchanged. Plaintiff was pleased and excited about the reassignment and agreed that this new position was more in line with her background. Her new duties included: (1) managing administrative personnel; (2) recruiting; (3) various human resources projects, as directed by Flanagan; (4) managing employee relations; (5) assisting with the Mentor Program process; and (6) maintaining audit staff seating, according to length of service and public experience.

Robin Molensky ("Molensky") was hired to assume the Staffing Position. Molensky was 30 years old when she was hired and her starting salary was in the low $50,000 range. Flanagan included Plaintiff in the recruiting process and Plaintiff interviewed Molensky herself. Plaintiff admittedly was impressed with Molensky's credentials and recognized that Molensky had a number of years of experience performing staffing functions.

According to Defendant, Plaintiff continued to perform poorly in the Administrative Position. Examples cited by Defendant are sending out memoranda to the entire firm with inaccurate information; misinforming a part-time employee who was being terminated that she was eligible for unemployment insurance when in fact, she was not; misinforming new hires of their vacation entitlements; excessive cell phone use in the office during working hours; failing to return phone calls; not dressing in a professional manner; and having to ask questions

for which she should have known the answer.  (Def.'s Rule 56.1 Stmt. ¶¶ 85-93.)

Flanagan prepared a performance evaluation for Plaintiff in March or April of 2003.  Plaintiff received an overall evaluation of "Does Not Meet Expectations" in the following performance areas: (1) Technical/Functional performance; (2) Management Skills; (3) Understanding the Business; (4) Client Service; and (5) Communication.  (Pl.'s Dep. Ex. O.) Plaintiff received a grade of "Meets Expectations" in a limited number of areas.

In or about June 2003, Selinger, who was 50 years old at the time, made the decision to fire Plaintiff.  Flanagan informed Plaintiff of Selinger's decision.  It is undisputed that Flanagan did not have the authority to terminate Plaintiff without approval from Selinger. Plaintiff was offered three weeks severance pay.  Her last official day was June 6, 2003.

After Plaintiff's termination, Flanagan, Helen Mangones ("Mangones"), a benefits administrator at the firm, and Pat Messa ("Messa"), the office manager, all assumed some of Plaintiff's job duties.  Mangones is three years younger than Plaintiff; there is no information in the record as to Messa's age.

## DISCUSSION

### I.  *Applicable Law and Legal Standards*

#### A.  *Summary Judgment*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law.  *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).  The relevant governing law in each case determines which facts are

material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

   To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

   The district court, in considering a summary judgment motion, must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary

judgment motions.  *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988).  Where the

non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's

burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an

essential element of the non-movant's claim.  *Id.* at 210-11.  Where a movant without the

underlying burden of proof offers evidence that the non-movant has failed to establish her claim,

the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not

'implausible.' "  *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

Summary judgment is generally inappropriate where questions of the defendant's

state of mind are at issue, *Gelb v. Board of Elections of the City of New York*, 224 F.3d 149, 157

(2d. Cir. 2000), and should thus be granted with caution in employment discrimination cases.

*Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v.

Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000).  Nonetheless, "summary judgment

remains available to reject discrimination claims in cases lacking genuine issues of material

fact."  *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994).  "The summary

judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind

would operate as a talisman to defeat an otherwise valid motion."  *Meiri v. Dacon*, 759 F.2d 989,

998 (2d Cir. 1985).  "[T]he salutary purposes of summary judgment — avoiding protracted,

expensive and harassing trials — apply no less to discrimination cases than to commercial or

other areas of litigation."  *Id.*  "When no rational jury could find in favor of the nonmoving party

because the evidence to support its case is so slight, there is no genuine issue of material fact and

a grant of summary judgment is proper."  *Gallo*, 22 F.3d at 1224.

**B.**     *The McDonnell-Douglas Burden-Shifting Methodology*

In *McDonnell-Douglas Corporation v. Green*, 411 U.S. 792, 802-804 (1973), the Supreme Court first enunciated the now-familiar "burden-shifting" formula used in analyzing Title VII employment discrimination claims based on indirect or circumstantial evidence. This standard was further refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981) and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-511 (1993). Claims brought pursuant to the ADEA are also analyzed under the McDonnell Douglas burden-shifting framework. *See Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

Under *McDonnell-Douglas* and its innumerable progeny, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the *McDonnell-Douglas* framework and its presumptions and burdens disappear, leaving the sole remaining issue of "discrimination vel non," and thus (3) the burden shifts back to the plaintiff to prove that the employer's stated reason is merely pretextual and that race discrimination was an actual reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

The burden of establishing a prima facie case of employment discrimination has been described as "modest," *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994), or even "minimal." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). It is a burden of production, not persuasion, and involves no credibility assessments. *Reeves*, 530

U.S. at 143.

Likewise, the employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle.  It is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory.  *See Seils v. Rochester City Sch. Dist.*, 192 F. Supp.2d 100, 111 (W.D.N.Y. 2002) (citing, *inter alia*, *Meiri*, 759 F.2d at 995 (2d Cir. 1985)), *aff'd*, 99 Fed. Appx. 350 (2d Cir. 2004).  Federal courts do not have a "roving commission to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n. 8 (7th Cir. 1987)), and  may not "sit as super personnel departments, assessing the merits — or even the rationality — of employers' non-discriminatory business decisions." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991).  Thus, "[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).

In order to demonstrate that the employer's stated non-discriminatory reasons for the allegedly discriminatory action are pretextual, "[a] plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995).  However, to rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight."  *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir.

1988). "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri*, 759 F.2d at 998.

## II. *Plaintiff Fails to Raise a Genuine Issue of Material Fact as to her Claim of Age Discrimination*

### A. *Plaintiff's Prima Facie Case*

To establish a prima facie case of discrimination, a plaintiff must show that: (1) she belonged to a protected class, (2) was qualified for the position she held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). For purposes of this motion, Defendant does not dispute that Plaintiff has established the first and third elements of her prima facie case, viz. that she was a member of a protected class[1] and that she suffered an adverse employment action. Defendant does contend, however, that Plaintiff cannot prove that she was qualified for the position she held or that she was terminated under circumstances giving rise to an inference of discriminatory intent.

To show qualification, a plaintiff need not demonstrate perfect or even average performance. "Rather, she need only make the 'minimal showing' that she possesses the basic skills necessary for the performance of the job." *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001) (citations and internal quotation marks omitted). Moreover, "[i]n a discharge case in which the employer has already hired the employee into the job in question, the inference of minimal qualification is, of course, easier to draw than in a hiring or promotion case because, by

_____

[1] This protection extends to employees who are at least 40 years old. *See* 29 U.S.C. § 631(a).

hiring the employee, the employer itself has already expressed a belief that she is minimally qualified." *Id.*

Here, Plaintiff avers that she was told when she accepted the position that "it would take at least a year before [she] would understand the position for which [she] was hired and that [she] would receive training." (Pl.'s Aff. ¶ 3.) The record bears out this contention as it is undisputed that Stempler spent a substantial amount of time training Plaintiff. Moreover, it is undisputed that Plaintiff was transferred to the Administrative Position because Flanagan believed that this job would be a more suitable one for Plaintiff based on her background, thereby implying some level of qualification. Drawing all inferences in favor of the non-moving party, and keeping in mind Plaintiff's de minimus burden at this stage, the Court finds that Plaintiff has made a "minimal showing" that she was qualified for the job.

With regard to the final element, Plaintiff primarily relies on several statements allegedly made by Flanagan to Plaintiff in November 2002, contemporaneously with Plaintiff's transfer to the Administrative Position, in support of her claim that she was terminated under circumstances giving rise to an inference of discrimination. According to Plaintiff's affidavit, Flanagan told Plaintiff that she was creating a new position, i.e., the Administrative Position, and that "she wanted to bring someone else into the department to do the scheduling for the accountants and other professionals." (Pl.'s Aff., dated May 26, 2005 ("Pl.'s Aff.") ¶ 7.) Flanagan further stated that "the accountants needed a scheduler who was closer to their age, so that they could bond and build stronger relationships" and that "the staffing function was better performed by a person closer in age to the younger accountants." (*Id.*) She also allegedly stated that "the partners of the firm believed that the job had been done best by Joanne Rey [Plaintiff's

predecessor in the Staffing Position] before she got married and had kids." (*Id.*) Flanagan denies making these statements. Plaintiff contends that although these statements were made over five months before her termination in June 2003, they are still relevant as they were made at the same time she was transferred from the Staffing Position to the Administrative Position and replaced in the Staffing Position by Molensky, a 30-year old.

A plaintiff may satisfy the fourth prong of a prima facie case of discrimination by demonstrating "the ultimate filling of the position with an individual who is not a member of the protected class." *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) ("[T]he fact that [plaintiff] was replaced by a 31-year-old is sufficient to give rise to the inference that [plaintiff] was the victim of discrimination."). In the present case, however, the position from which Plaintiff was terminated, i.e., the Administrative Position, was not ultimately filled by a substantially younger person. Rather, it was Plaintiff's former position, the Staffing Position, that was replaced by a 30-year old. Thus, it would appear that the above stated principle would not apply. Moreover, Plaintiff is not complaining of her transfer; in fact, she admits she was "pleased and excited" about this new position. (*See* Pl.'s Rule 56.1 Stmt. ¶ 67.) Rather, her suit is premised upon her termination from the Administrative Position. Nonetheless, given Plaintiff's minimal burden at this stage, and the fact that Flanagan's comments were clearly age related, the Court finds that Plaintiff has established a prima facie case of discrimination.

**B.** **Defendant's Legitimate, Nondiscriminatory Reason for Plaintiff's Discharge**

Once a plaintiff has established a prima facie case of discrimination, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. As

noted previously, an employer's burden of showing a legitimate non-discriminatory reason for its actions is not particularly onerous.

Here, Defendant maintains that it terminated Plaintiff because of her poor work performance. This claim, which is well supported in the record, clearly satisfies Defendant's burden. *See, e.g.*, *Gregory*, 243 F.3d at 696 ("An employer's dissatisfaction with even a qualified employee's performance may, of course, ultimately provide a legitimate, non-discriminatory reason for the employer's adverse action.").

## C. *Plaintiff's Final Burden of Demonstrating Discrimination*

Once an employer has articulated a legitimate, non-discriminatory reason for its actions, the plaintiff then has the burden of showing that the stated reason was pretextual, and that more likely than not discrimination motivated the adverse employment action. Here, Plaintiff's evidence boils down to the following four contentions: (1) Plaintiff never received any criticism of her job performance during the entire time she held the Staffing Position; (2) the Staffing Position was ultimately filled by a 30-year old; (3) the age-related comments made by Flanagan; and (4) Plaintiff was told she was being terminated because there was not enough work to keep her busy and not because of her alleged poor work performance. For the reasons stated below, the Court finds that this evidence, taken as a whole, is insufficient as a matter of law to support the conclusion that Plaintiff was terminated because of her age.

### 1. *Same Actor Inference*

The Second Circuit has explained that there are certain factors that "strongly suggest that invidious discrimination was unlikely. For example, when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to

-13-

[him] an invidious motivation that would be inconsistent with the decision to hire." *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997); *see also Schnabel*, 232 F.3d at 91 (concluding that this factor "remains a highly relevant factor in adjudicating a motion for summary judgment on an ADEA claim"); *Spiegler v. Israel Discount Bank of New York*, No. 01 Civ. 6364, 2003 WL 21488040, at *10 (S.D.N.Y. June 25, 2003) ("The rationale behind this inference is that '[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of ass[o]c[i]ating with them), only to fire them once they are on the job.'") (quoting Donohue & Siegelman, *The Changing Nature of Employment Discrimination Litigation*, 43 STAN. L. REV. 983, 1017 (1991)). The inference of discrimination is even weaker when "when the firing has occurred only a short time after the hiring." *Id.*

Here, because Selinger both hired Plaintiff at 54 and later fired her at 56, the "same actor" inference applies.[2] Moreover, the fact that Plaintiff was fired so soon after she was hired undercuts her argument that she was discharged because of her age; it would be difficult for a reasonable juror to conclude that Defendant fired Plaintiff because she was twenty-one months older than when she was hired. *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137-38 (2d Cir. 2000) (citing cases where difference of "under two years" between hiring and firing provides strong inference against discrimination). Accordingly, at the outset, the Court finds that there is an inference against discrimination.[3]

---

[2] Although Plaintiff argues in a conclusory fashion that Selinger alone did not make the decision to hire her but that it was a "group decision of the executive committee," (Pl.'s Dep. at 67), Plaintiff presents no evidence to support this claim. Moreover, it is undisputed that Selinger communicated the firm's offer to Plaintiff and signed Plaintiff's offer letter.

[3] Although Defendant argues that there is a further inference against discrimination because Selinger was 51 years old when he fired Plaintiff, given Second Circuit dicta that "[t]he

## 2.    *Defendant's Evidence of Plaintiff's Poor Work Performance*

Defendant has amassed a significant quantity of evidence that would allow a rational factfinder to conclude that its decision to terminate Plaintiff was based on her poor performance.  In addition to the deposition testimony of Selinger and Flanagan, Defendant submits five sworn declarations by various accountants at the firm, each one detailing Plaintiff's performance deficiencies.  (*See* Decl. of Doron Avni, dated June 7, 2005; Decl. of Craig A. Savell, dated June 6, 2005; Decl. of Nurez Rahman, dated June 6, 2005; Decl. of John Schmuck, dated June 7, 2005; Decl. of Terry Strassberg, dated June 6, 2005.)  For example, the accountants complain of Plaintiff's "failure to adapt well to the fast paced environment of an accounting firm during the height of tax season," her lack of the "requisite organizational abilities to handle staffing and scheduling duties," her "non-responsive[ness]," her complete lack of "effort to get to know the [firm's] professionals and its clients,'" and her failure to learn from her mistakes and to comprehend the basics of her job.  All of the accountants state that they reported Plaintiff's deficiencies directly to Selinger.  Indeed, one accountant indicates that Plaintiff's "weaknesses were known throughout the firm."  (Avni Decl. ¶ 4.)

In response, other than her own conclusory assertions that she performed diligently and that she was never informed of her alleged poor performance, discussed *infra*, Plaintiff has not presented any evidence suggesting that her work was up to par or that Defendant did not believe that she performed poorly.  Moreover, there is nothing in the record to suggest that any of these accountants or Selinger harbored any discriminatory bias.  In fact, Plaintiff

---

proposition that people in a protected category cannot discriminate against their fellow class members is patently untenable," *Danzer v. Norden Sys., Inc.*,151 F.3d 50, 55 (2d Cir. 1998), the Court declines to draw that inference.

admits that Selinger never took any actions or made any statements which would indicate that Plaintiff was being discriminated against because of her age. In addition, it is undisputed that upon her hiring, Plaintiff was provided with substantial training. Under these circumstances, Plaintiff's subjective belief of adequate performance, uncorroborated by any evidence in the record, is insufficient to raise a triable issue of fact as to whether Defendant's stated reason for her discharge, i.e., her poor performance, was false.

That does not end the Court's analysis, however. As noted above, in order to demonstrate that the employer's stated non-discriminatory reasons for the allegedly discriminatory action are pretextual, "[a] plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Cronin*, 46 F.3d at 203; *see also Carlton*, 202 F.2d at 135 ("Plaintiff need not prove that age was the only or even the principal factor in the adverse employment action, but only that age was at least one of the motivating factors in that decision."). Thus, with these principles in mind, the Court turns to a discussion of Plaintiff's evidence of discrimination.

### 3. *Defendant's Alleged Failure to Inform Plaintiff of her Poor Work Performance*

Plaintiff contends that no one ever informed her that she was performing poorly in the Staffing Position. Courts in this Circuit have found "the fact that an employee was unaware of [her] employer's dissatisfaction is irrelevant to a court's inquiry on the issue." *Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 310-11 (S.D.N.Y. 2000) (internal quotation marks and citations omitted); *see also Fagan v. New York State Elec. & Gas Corp.*, 186 F.3d 127, 134-35 (2d Cir. 1999) (noting that chief executive officer's failure to censure plaintiff "quickly and

decisively" at most "shows that [CEO] was less than fully forthcoming with [plaintiff]"; "We find it difficult to imagine that a rational fact-finder would infer from this reticence that the reason articulated for [plaintiff's] termination was pretextual."); *Gambello v. Time Warner Commc'ns, Inc.*, 186 F. Supp. 2d 209, 222 (E.D.N.Y. 2002) (noting that defendants "still would be entitled to summary judgment" even if they "had not made plaintiff aware of his poor performance").

Moreover, the Court notes that Plaintiff's alleged lack of awareness is limited to her performance in the Staffing Position. In that regard, it is undisputed that Plaintiff received a poor evaluation in March or April of 2003 as to her performance in the Administrative Position, which is the position she was ultimately discharged from. Accordingly, the Court finds that Plaintiff's claim that Defendant never criticized her work performance while she held the Staffing Position has little probative value, if any, on the issue of whether she was terminated based on her age.

### 4. *Defendant's Stated Reason for Terminating Plaintiff*

Plaintiff briefly alleges that she was told that she was being discharged because the Administrative Position was being eliminated. Even if this statement was made, it does not support any inference of discrimination or pretext. Indeed, it provides another legitimate reason for her termination. It is also undisputed that the duties of the Administrative Position were assumed by existing employees, two of whom were over 40 years old. Accordingly, this allegation is insufficient to raise a triable issue of fact.

### 5. *The Hiring of Molensky and Flanagan's Comments*

In the end, all that remains is the fact that subsequent to Plaintiff's transfer, the

Staffing Position was ultimately filled by a 30-year old, together with Flanagan's contemporaneous comments indicating that this position was "better performed by a person closer in age to the younger accountants."

The replacement of an older worker with a younger worker, while perhaps sufficient to raise an inference of discrimination, does not by itself *prove* unlawful discrimination. *See Fagan*, 186 F.3d at 134. Similarly, it is well-established that stray remarks, even if made by a decision maker, without more, do not constitute sufficient evidence to make out a case of discrimination. *See Danzer*, 151 F.3d at 56. When other indicia of discrimination are presented, however, "the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance." *Id.* In order for the remarks to be deemed significant, the plaintiff must show their nexus to the adverse employment decision. *See, e.g.*, *Pronin v. Raffi Custom Photo Lab, Inc.,* 383 F. Supp. 2d 628, 636-37 (S.D.N.Y. 2005) (citing cases).

Here, had Plaintiff claimed that her transfer from the Staffing Position to the Administrative Position was an adverse action, the Court would be hard pressed not to conclude that Flanagan's comments, together with the fact that the Staffing Position was ultimately filled by a 30-year old, created a genuine issue of material fact as to whether Defendant transferred Plaintiff due to her age. Plaintiff, however, is not claiming that her transfer was an adverse action. To the contrary, Plaintiff admits that she was happy about the transfer and that she agreed that her new position was more in line with her background. Moreover, she concedes that she participated in the interviewing and recruiting of Molensky, whom she was impressed with, and admits that Molensky had a number of years of experience performing staffing functions.

She further admits that Molensky was hired at a much lower salary than Defendant had been paying Plaintiff.  Because of this apparent disconnect between Plaintiff's evidence of discrimination, which centers around her transfer, and her subsequent termination, Plaintiff endeavors to link the two.  Her attempts are unavailing.

As a preliminary matter, there is nothing in the record to suggest that Flanagan's comments and the hiring of Molensky for the Staffing Position bear a nexus to Selinger's decision to terminate Plaintiff from the Administrative Position.  In fact, Flanagan's comments themselves support the opposite conclusion.  The entire gist of her remarks was that the Staffing Position was better suited to a younger person and the Administrative Position was better suited to Plaintiff given Plaintiff's background and experience.  Moreover, Defendant has submitted uncontraverted evidence which indicates that although Selinger wanted to terminate Plaintiff prior to the transfer based on her poor performance, Flanagan convinced him to give Plaintiff a chance in a new role, i.e., the Administrative Position.  Thus, Flanagan's comments indicate only that Plaintiff's age was a factor in her transfer and have no bearing on her later termination.

Moreover, Flanagan's comments were made five months prior to Stelinger's decision to terminate Plaintiff.  Although Flanagan, who had no authority to fire Plaintiff herself, arguably played some role in Plaintiff's discharge as she composed the performance review which led to Plaintiff's firing, Plaintiff has offered no evidence that Flanagan's remarks were related in any way to Selinger's decision.  For example, there is no evidence that Flanagan's comments were part of a sequence of events culminating in Plaintiff's discharge based on her age.  In fact, after her termination, Plaintiff's  administrative duties were assumed by three other employees, to wit, Flanagan, Mangones, and Messa, at least one of whom, Mangones, was only

three years younger than Plaintiff. Flanagan was over 40 years old at the time and there is no evidence in the record as to Messa's age.

In sum, the Court finds that with little evidence beyond the few remarks by Flanagan which were unrelated to the termination decision, a reasonable factfinder could not conclude that age was the real reason for Plaintiff's termination. Although it is true that in some cases, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," *Reeves*, 530 U.S. at 148, an "employer [is] entitled to judgment as a matter of law if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there [i]s abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* Considering the evidence as a whole, the Court finds that it strongly supports Defendant's contention that Plaintiff was fired because of her poor work performance and gives very little support, if any, to Plaintiff's contention that the proffered reason was pretext and that age discrimination was the true reason. Accordingly, Plaintiff's claims under the ADEA are dismissed.

## III.  *Plaintiff's New York State Human Rights Law Claims Are Dismissed*

As mentioned previously, Plaintiff also claims that Defendant violated the NYSHRL. This claim too, must fail.

Discrimination claims under the ADEA are subject to the same analysis as claims brought pursuant to the NYSHRL. *Abdu-Brisson v. Delta Airlines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). Thus, NYSHRL claims are generally considered in tandem with ADEA claims and a

district court need not explicitly evaluate a plaintiff's NYSHRL claims where it has thoroughly analyzed the plaintiff's ADEA claims. *See Smith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir. 1999). In the present case, as Plaintiff has failed to state a claim under the ADEA, she has ipso facto failed to state a claim under the NYSHRL as well.

## *CONCLUSION*

For all of the above reasons, Defendants' motion for summary judgment is GRANTED as to all of Plaintiff's claims, and this case is accordingly DISMISSED in its entirety. The Clerk of Court is directed to CLOSE this case.

**SO ORDERED.**

Dated: March 20, 2006
Central Islip, New York

/s_____
Denis R. Hurley,
United States District Judge